## ANDERSIN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN SANDERS AND JANET SANDERS<br><br>                   Plaintiffs,<br><br>        vs.<br><br>TAKEDA PHARMACEUTICALS USA, INC. f/k/a<br>TAKEDA PHARMACEUTICALS NORTH AMERICA,<br>INC., TAKEDA PHARMACEUTICALS AMERICA,<br>INC., TAKEDA GLOBAL RESEARCH &<br>DEVELOPMENT CENTER, INC., and TAKEDA<br>PHARMACEUTICALS INTERNATIONAL, INC.<br><br>                   Defendants. | **Civil Action No.:**<br><br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, by their attorneys, **FINZ & FINZ, P.C.**, upon information and belief, at all times hereinafter mentioned, alleges as follows:

### JURISDICTION

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiffs exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated and have their principal places of business in states other than the state in which the named Plaintiffs reside.

### PARTY PLAINTIFFS

2.     Plaintiffs, JOHN SANDERS and JANET SANDERS, allege as follows:

      a.     Plaintiffs, JOHN SANDERS and JANET SANDERS, are citizens of the State of New York.

      b.     Upon information and belief, plaintiff, JOHN SANDERS, ingested Actos in or about 2005 and continued consistently through May of 2014.

1

c.      Following and as a legal and proximate result of Actos use, plaintiff, JOHN SANDERS, suffered bladder cancer on or about May of 2014.

d.      Plaintiff, JANET SANDERS, was and is the lawful spouse of plaintiff, JOHN SANDERS, and as such, was and is entitled to the comfort, enjoyment, society and services of her spouse.

## PARTY DEFENDANTS

4.      Takeda Pharmaceuticals USA, Inc. f/k/a Takeda Pharmaceuticals North America, Inc. is a Delaware corporation which has its principal place of business at One Takeda Parkway Deerfield, IL 60015.

5.      Takeda Pharmaceuticals USA, Inc. f/k/a Takeda Pharmaceuticals North America, Inc. is a wholly owned subsidiary of Takeda Pharmaceutical Company Limited.

6.      Takeda Pharmaceuticals USA, Inc. f/k/a Takeda Pharmaceuticals North America, Inc. has transacted and conducted business within the State of New York.

7.      Takeda Pharmaceuticals USA, Inc. f/k/a Takeda Pharmaceuticals North America, Inc. has derived substantial revenue from goods and products used in the State of New York.

8.      Takeda Pharmaceuticals USA, Inc. f/k/a Takeda Pharmaceuticals North America, Inc. expected or should have expected their acts to have consequences within the State of New York, and derived substantial revenue from interstate commerce.

9.      Takeda Pharmaceuticals America, Inc. is a Delaware Corporation which has its principal place of business at One Takeda Parkway Deerfield, IL 60015.

10.     Takeda Pharmaceuticals America, Inc. is a wholly owned subsidiary of Takeda Pharmaceuticals USA, Inc. f/k/a Takeda Pharmaceuticals North America, Inc.

11.    Takeda Pharmaceuticals America, Inc. has derived substantial revenue from goods and products used in the State of New York.

12.    Takeda Pharmaceuticals America, Inc. expected or should have expected their acts to have consequences within the State of New York, and derived substantial revenue from interstate commerce.

13.    Takeda Global Research & Development Center, Inc. is a Delaware corporation which has its principal place of business at One Takeda Parkway, Deerfield, IL 60015.

14.    Takeda Global Research & Development Center, Inc. is a wholly-owned subsidiary of Takeda Pharmaceuticals USA, Inc.

15.    Takeda Global Research & Development Center, Inc. has transacted and conducted business within the State of New York.

16.    Takeda Global Research & Development Center, Inc. has derived substantial revenue from goods and products used in the State of New York.

17.    Takeda Global Research & Development Center, Inc. expected or should have expected their acts to have consequences within the State of New York, and derived substantial revenue from interstate commerce.

18.    Takeda Pharmaceuticals International, Inc. is a Delaware corporation with its principal place of business located at One Takeda Parkway, Deerfield, IL 60015.

19.    Takeda Pharmaceuticals International, Inc. is a wholly-owned subsidiary of Takeda Pharmaceuticals USA, Inc.

20.    Takeda Pharmaceuticals International, Inc. has transacted and conducted business within the State of New York.

21.     Takeda Pharmaceuticals International, Inc. has derived substantial revenue from goods and products used in the State of New York.

22.     Takeda Pharmaceuticals International, Inc. expected or should have expected their acts to have consequences within the State of New York, and derived substantial revenue from interstate commerce.

23.     The above defendants are collectively referred to herein as "Takeda" or "Defendants".

## FACTUAL BACKGROUND

24.     Defendants, directly or through their agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed, promoted and sold ACTOS, for the treatment of type two diabetes mellitus.

25.     ACTOS was launched by Takeda Pharmaceuticals USA, Inc. f/k/a Takeda Pharmaceuticals North America, Inc. in 1999.

26.     According to the American Diabetes Association, type II diabetes is the most common form of diabetes.  Type II diabetes develops when the body does not produce enough insulin or doesn't efficiently use the insulin that it does produce.  Type I diabetes occurs when the body does not produce any insulin at all.  Insulin is necessary for the body to be able to use glucose for energy.

27.     ACTOS was approved by the Food and Drug Administration ("FDA") in July of 1999 to treat type II diabetes.  ACTOS is in a class of insulin-sensitizing diabetes agents known as thiazolidinediones ("TZD"s).

28.     ACTOS exerts its antihyperglycemic effect only in the presence of endogenous insulin.  Therefore, ACTOS is only used to treat type II diabetes and should not be used to treat

4

type I diabetes.

29.     ACTOS is sold as a single ingredient product under the brand name ACTOS, and it is also sold in combination with metformin (Actoplus Met, Actoplus Met XR) and in combination with glimepiride (Duetact).

30.     As a result of the defective nature of ACTOS, persons who were prescribed and ingested ACTOS for more than twelve (12) months, including Plaintiffs, have suffered and may continue to suffer from bladder cancer.

31.     Defendants concealed and continue to conceal their knowledge that ACTOS can cause bladder cancer from Plaintiff, other consumers, and the medical community.  Specifically, Defendants have yet to adequately inform consumers and the prescribing medical community about the risks of bladder cancer with use of ACTOS for more than twelve (12) months.

32.     As a result of Defendants' actions and inactions, Plaintiff was injured due to his ingestion of ACTOS, which caused and will continue to cause Plaintiff various injuries and damages.

33.     Prior to ACTOS being approved by the FDA, a two-year carcinogenicity study was conducted on male and female rats.  Drug-induced tumors were observed in male rats receiving doses of ACTOS that produced blood drug levels equivalent to those resulting from a clinical dose.

34.     In 2005, the results of a three-year study were published that prospectively looked at the impact in total mortality and macrovascular morbidity using ACTOS.  Dormandy J.A., et al. *Secondary Prevention of Macrovascular Events in Patients with Type 2 Diabetes in the PROactive Study (PROspective PioglitAzone Clinical Trial In MacroVascular Events): a Randomized Controlled Trial*, Lancet, 266:1279-1289 (2005).

35. The PROactive study was looking at cardiovascular events and outcomes. However, the study demonstrated a higher percentage of bladder cancer cases in patients receiving ACTOS versus comparators. This information was not included in the published Dormandy paper.

36. A three-year liver safety study was also performed, and according to the FDA, that study also demonstrated a higher percentage of bladder cancer cases in patients receiving ACTOS versus comparators.

37. On September 17, 2010, the FDA issued a Safety Announcement stating it was undertaking a review of the data from an ongoing, ten-year epidemiological study being conducted by Kaiser Permanente to evaluate the association between ACTOS and bladder cancer. The planned five-year interim analysis demonstrated that the risk of bladder cancer increases with increasing dose and duration of ACTOS use, reaching statistical significance after 24 months.

38. Despite this finding by the FDA, Robert Spanheimer, Vice President of Medical and Scientific Affairs for Takeda, claimed to Reuters that the Kaiser Permanente study has not shown a risk to patients of bladder cancer or other cancers from ACTOS.

39. In early 2011, the American Diabetes Association published *Assessing the Association of Pioglitazone Use and Bladder Cancer Through Drug Adverse Event Reporting,* Piccinni, et al. Diabetes Care, 34:1369-1371 (June 2011), published ahead of print April 22, 2011. This study looked at adverse events reports made to the FDA between 2004 and 2009. The conclusion of that study was that "[i]n agreement with preclinical and clinical studies, AERS analysis is consistent with an association between pioglitazone and bladder cancer. This issue needs constant epidemiologic surveillance and urgent definition by more specific studies."

40.     On June 9, 2011, the European Medicines Agency announced that it had been informed by the French Medicines Agency of its decision to suspend the use of pioglitazone-containing medicines in France while awaiting the outcome of the ongoing European review.

41.     France's decision was based upon a retrospective cohort study in France using the French National Health Insurance Plan which demonstrated a statistically significant increase in the risk for bladder cancer in males exposed to ACTOS for more than a year.  The French cohort included 1.5 million patients with diabetes that were followed for 4 years (2006-2009).

42.     On June 10, 2011, Reuters published that Germany had joined France in suspending the use of ACTOS after Germany's Federal Institute for Drugs and Medical Devices ("BfArM") reviewed the results of the French study.   BfArM recommended that doctors should not put new patients on pioglitazone.

43.     On June 15, 2011, the FDA issued another Safety Announcement stating that "use of the diabetes medication ACTOS (pioglitazone) for more than one year may be associated with an increased risk of bladder cancer."  The FDA ordered information about this risk to be added to the *Warnings and Precautions* section of the label for pioglitazone-containing medicines.

44.     The FDA reported that the risk of bladder cancer increased with increasing dose and duration of pioglitazone use.  When compared to persons never exposed to pioglitazone, exposed to pioglitazone therapy for longer than 12 months was associated with a 40% increase in risk.  Based on this data, the FDA calculated that therapy with ACTOS for longer than 12 months was associated with 27.5 excess cases of bladder cancer per 100,000 person-years follow-up, compared to those who never used pioglitazone.

45.     On July 12, 2011, Takeda Pharmaceutical Company Limited issued a recall on ACTOS in France.

46.     As the manufacturers and/or distributors of ACTOS, Defendants knew or should have known that ACTOS use for longer than 12 months was associated with bladder cancer. Instead, Defendants promoted ACTOS as a safe and effective treatment for type II diabetes.

47.     Piccinni, et al. analyzed the association between antidiabetic drugs and bladder cancer by reviewing reports from the FDA Adverse Event Reporting System ("AERS") between 2004 and 2009.  The association was analyzed by the case/noncase methodology.  There were 31 recorded reports of bladder cancer in patients using pioglitazone.  Piccinni's results indicated that the reporting odds ratio for pioglitazone was indicative of a "definite risk."  *Assessing the Association of Pioglitazone Use and Bladder Cancer Through Drug Adverse Event Reporting,* Piccini, et al. Diabetes Care, 34:1369-1371 (June 2011), published ahead of print April 22, 2011.

48.     Despite its knowledge of this dangerous side effect that can result from ACTOS use, Defendants refused to warn patients, physicians and the medical community about the risk of bladder cancer.

49.     ACTOS is one of Defendants' top selling drugs.  Upon information and belief, in the last year, the medication had global sales of $4.8 billion and accounted for approximately 27% of Takeda's revenue.  In 2008, ACTOS was the tenth best-selling medication in the United States.

50.      Consumers, including Plaintiff, who have used ACTOS for treatment of type II diabetes, have several alternative safer products available to treat the conditions and have not been adequately warned about the significant risks and lack of benefits associated with long-term ACTOS therapy.

51.     Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff and his physicians the true and significant risks associated with long-term ACTOS use.

52.     As a result of Defendants' actions, Plaintiff and his prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this Complaint, and that those risks were the direct and proximate result of Defendants' acts, omissions, and misrepresentations.

53.     Plaintiff was prescribed and began taking ACTOS upon direction of his physicians.

54.     Plaintiff subsequently developed bladder cancer.

55.     As a direct result of being prescribed ACTOS for many years Plaintiff has been permanently and severely injured, having suffered serious consequences from long-term ACTOS use.

56.     Plaintiff requires and will in the future require ongoing medical care and treatment.

57.     Plaintiff, as a direct and proximate result of long-term ACTOS use, suffered severe mental and physical pain and suffering and have and will sustain permanent injuries and emotional distress, along with economic loss due to medical expenses, and living related expenses due to their new lifestyle.

58.     Plaintiff would not have used ACTOS had Defendants properly disclosed the risks associated with its long-term use.

## FEDERAL REQUIREMENTS

59.     Defendants had an obligation to comply with the law in the manufacture, design, and sale of ACTOS.

60.     Upon information and belief, Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*

61.     With respect to the prescription drug ACTOS, the Defendants, upon information and belief, has or may have failed to comply with all federal standards applicable to the sale of prescription drugs including, but not limited to, one or more of the following violations:

a.  The prescription drug ACTOS is adulterated pursuant to 21 U.S.C. § 351 because, among other things, it fails to meet established performance standards, and/or the methods, facilities, or controls used for its manufacture, packing, storage or installation is not in conformity with federal requirements. See, 21 U.S.C. § 351.

b.  The prescription drug ACTOS is adulterated pursuant to 21 U.S.C. § 351 because, among other things, its strength differs from or its quality or purity falls below the standard set forth in the official compendium for ACTOS and such deviations are not plainly stated on their labels.

c.  The prescription drug ACTOS is misbranded pursuant to 21 U.S.C. §352 because, among other things, its labeling is false or misleading.

d.  The prescription drug ACTOS is misbranded pursuant to 21 U.S.C. §352 because words, statements, or other information required by or under authority of chapter 21 U.S.C. § 352 are not prominently placed thereon with such conspicuousness and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

e.  The prescription drug ACTOS is misbranded pursuant to 21 U.S.C. §352 because the labeling does not bear adequate directions for use, and/or the labeling does not bear adequate warnings against use where its use may be

dangerous to health or against unsafe dosage or methods or duration of administration or application, in such manner and form as are necessary for the protection of users.

f.   The prescription drug ACTOS is misbranded pursuant to 21 U.S.C. §352 because it's dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.

g.   The prescription drug ACTOS does not contain adequate directions for use pursuant to 21 CFR § 201.5, because, among other reasons, of omission, in whole or in part, or incorrect specification of (a) statements of all conditions, purposes, or uses for which it is  intended, including conditions, purposes, or uses for which it is prescribed, recommended or suggested in their oral, written, printed, or graphic advertising, and conditions, purposes, or uses for which the drugs are commonly used, (b) quantity of dose, including usual quantities for each of the uses for which it is intended and usual quantities for persons of different ages and different physical conditions, (c) frequency of administration or application, (d) duration or administration or application, and/or (d) route or method of administration or application.

h.   The Defendants violated 21 CFR § 201.56 because the labeling was not informative and accurate.

i.   The prescription drug ACTOS is misbranded pursuant to 21 CFR § 201.56 because the labeling was not updated as new information became available that caused the labeling to become inaccurate, false, or misleading.

j.  The Defendants violated 21 CFR § 201.57 by failing to provide information that is important to the safe and effective use of the drug including the potential of ACTOS cause and the need for regular and/or consistent monitoring to ensure that a bladder cancer has not developed.

k.  The Defendants violated 21 CFR § 201.57 because they failed to identify specific tests needed for selection or monitoring of patients who took the prescription drug ACTOS.

l.  The Defendants violated 21 CFR § 201.57 because the safety considerations regarding the prescription drug ACTOS are such that the drug should be reserved for certain situations, and the Defendants failed to state such information.

m.  The prescription drug ACTOS is mislabeled pursuant to 21 CFR § 201.57 because the labeling fails to describe serious adverse reactions and potential safety hazards, limitations in use imposed by it, and steps that should be taken if they occur.

n.  The prescription drug ACTOS is mislabeled pursuant to 21 CFR § 201.57 because the labeling was not revised to include a warning as soon as there was reasonable evidence of an association of a serious hazard with the drug.

o.  The Defendants violated 21 CFR § 201.57 because the labeling failed to list the adverse reactions that occur with the prescription drug ACTOS and other drugs in the same pharmacologically active and chemically related class.

p.  The Defendants violated 21 CFR § 201.57 because the possibility that a patient could develop bladder cancer; and yet the Defendants failed to list those

developments before the other adverse reactions on the labeling of the prescription drug ACTOS.

q.  The prescription drug ACTOS is mislabeled pursuant to 21 CFR § 201.57 because the labeling does not state the recommended usual dose, the usual dosage range, and, if appropriate, an upper limit beyond which safety and effectiveness have not been established.

r.  The prescription drug ACTOS violates 21 CFR § 210.1 because the process by which it was manufactured, processed, and/or held fails to meet the minimum current good manufacturing practice of methods to be used in, and the facilities and controls to be used for, the manufacture, packing, or holding of a drug to assure that it meets the requirements as to safety and have the identity and strength and meets the quality and purity characteristic that they purport or are represented to possess.

s.  The prescription drug ACTOS violates 21 CFR § 210.122 because the labeling and packaging materials do not meet the appropriate specifications.

t.  The prescription drug ACTOS violates 21 CFR § 211.165 because the test methods employed by the Defendants are not accurate, sensitive, specific, and/or reproducible and/or such accuracy, sensitivity, specificity, and/or reproducibility of test methods have not been properly established and documented.

u.  The prescription drug ACTOS violates 21 CFR § 211.165 in that the prescription drug ACTOS fails to meet established standards or specifications and any other relevant quality control criteria.

v.   The prescription drug ACTOS violates 21 CFR § 211.198 because the written procedures describing the handling of all written and oral complaints regarding the prescription drug ACTOS were not followed.

w.   The prescription drug ACTOS violates 21 CFR § 310.303 in that the prescription drug ACTOS is not safe and effective for its intended use.

x.   The Defendants violated 21 CFR § 310.303 because the Defendants failed to establish and maintain records and make reports related to clinical experience or other data or information necessary to make or facilitate a determination of whether there are or may be grounds for suspending or withdrawing approval of the application to the FDA.

y.   The Defendants violated 21 CFR §§310.305 and 314.80 by failing to report adverse events associated with the prescription drug ACTOS as soon as possible or at least within 15 days of the initial receipt by the Defendants of the adverse drugs experience.

z.   The Defendants violated 21 CFR §§310.305 and 314.80 by failing to conduct an investigation of each adverse event associated with the prescription drug ACTOS, and evaluating the cause of the adverse event.

aa.  The Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to promptly investigate all serious, unexpected adverse drug experiences and submit follow-up reports within the prescribed 15 calendar days of receipt of new information or as requested by the FDA.

14

bb. The Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to keep records of the unsuccessful steps taken to seek additional information regarding serious, unexpected adverse drug experiences.

cc. The Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to identify the reports they submitted properly, such as by labeling them as "15-day Alert report," or "15-day Alert report follow-up."

dd. The Defendants violated 21 CFR § 312.32 because they failed to review all information relevant to the safety of the prescription drug ACTOS or otherwise received by the Defendants from sources, foreign or domestic, including information derived from any clinical or epidemiological investigations, animal investigations, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers, as well as reports from foreign regulatory authorities that have not already been previously reported to the agency by the sponsor.

ee. The Defendants violated 21 CFR § 314.80 by failing to provide periodic reports to the FDA containing (a) a narrative summary and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting interval, (b) an Adverse Reaction Report for each adverse drug experience not already reported under the Post marketing 15-day Alert report, and/or (c) a history of actions taken since the last report because of adverse drug experiences (for example, labeling changes or studies initiated).

ff.   The Defendants violated 21 CFR § 314.80 by failing to submit a copy of the published article from scientific or medical journals along with one or more 15-day Alert reports based on information from the scientific literature.

62.    Defendants failed to meet the standard of care set by the above statutes and regulations, which were intended for the benefit of individual consumers such as the Plaintiff, making the Defendants negligent *per se*.

**FIRST CAUSE OF ACTION**
**AGAINST THE DEFENDANTS**
<u>**NEGLIGENCE**</u>

63.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

64.    Defendants had a duty to exercise the care of an expert in all aspects of the formulation, manufacture, compounding, testing, inspection, packaging, labeling, distribution, marketing, and sale of ACTOS to ensure the safety of ACTOS and to ensure that the consuming public, including the Plaintiff and Plaintiff's physicians and agents, obtained accurate information and instructions for the use of ACTOS.

65.    Defendants owed a duty toward foreseeable users of ACTOS drug products to exercise reasonable care to ensure that ACTOS drugs were reasonably safe for ordinary and intended uses, and specifically, *inter alia*, to ensure through adequate testing, labeling, and otherwise, that physicians who would be likely to prescribe the products for their patients' use were adequately informed as to the potential effects of using the products in ordinary and foreseeable ways, in particular the risks increased bladder cancer, heart attacks, and cardiac arrhythmias.

66.     Defendants failed to exercise reasonable care in testing ACTOS for side effects in ordinary and foreseeable users; and failed to disseminate to physicians accurate and truthful information concerning the effects of ACTOS; thus, physicians were not able to make informed choices concerning the use of ACTOS drug products.

67.     Defendants failed to exercise ordinary care in the manufacture, sale, testing, marketing, quality, assurance, quality control and/or distribution of ACTOS into the stream of commerce in that Defendants knew or should have known that ACTOS drug products created a foreseeable high risk of unreasonable, dangerous side effects and health hazards.

68.     The dangerous propensities of ACTOS drug products as referenced above, were known or scientifically knowable, through appropriate research and testing, to the Defendants at the time it distributed, supplied, or sold the products, and not known to ordinary physicians who would be expected to prescribe ACTOS for the Plaintiff and other patients, similarly situated.

69.     The information Defendants disseminated to physicians concerning ACTOS drug products was, in fact, inaccurate, misleading, and otherwise inadequate, as described above.

70.     As a proximate result, the Plaintiff suffered grievous bodily injuries and consequent economic and other losses when he ingested ACTOS.

71.     The Defendants were negligent, and breached their duties of reasonable care to the Plaintiff with respect to ACTOS drug products in one or more of the following respects:

(a)     Despite knowledge of hazards and knowledge that the product was frequently prescribed for the use, Defendants failed to accompany the product with adequate warnings and instructions regarding the adverse and long lasting side effects associated with the use of ACTOS;

(b)     Defendants failed to conduct adequate testing;

(c)     Despite knowledge of hazards, Defendants failed to conduct adequate post-marketing surveillance to determine the safety of the product;

(d)     Despite knowledge of hazards, Defendants failed to adequately warn Plaintiff's physicians or the Plaintiff that the use of ACTOS drug products could result in severe side effects as described above;

(e)     Despite the fact that the Defendants knew or should have known that their ACTOS drug products caused unreasonably dangerous side effects, Defendants failed to adequately disclose the known or knowable risks associated with ACTOS as set forth above; Defendants willfully and deliberately failed to adequately disclose these risks, and in doing so, acted with a conscious disregard of the Plaintiffs safety and/or welfare;

(f)     Defendants failed to design, develop, implement, administer, supervise and monitor its clinical trials for ACTOS; and

(g)     Defendants, in its promotion of ACTOS, were overly aggressive and deceitful, and promoted ACTOS in a fraudulent manner, despite evidence known to Defendants that ACTOS was dangerous.

72.     As a direct and proximate result of the wrongful acts of the Defendants, the Plaintiff developed severe side effects as described herein, and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiff's earnings capacity; incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

73.     The negligence, carelessness, and the willful and wanton misconduct of the Defendants was a proximate cause of Plaintiff's harms and injuries that the Decedents suffered and Plaintiffs will continue to suffer.

74.     In the alternative, Defendants' acts of omissions and concealment of material facts of the design and manufacturing defects were made with the understanding that patients and physicians would rely upon such statements when choosing ACTOS drug products.

75.     Furthermore, the economic damages and physical harm caused by Defendants' conduct would not have occurred had Defendants exercised the high degree of care imposed upon it.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiffs for their injuries and which will deter the Defendants and others from like conduct.

**SECOND CAUSE OF ACTION**
**AGAINST THE DEFENDANTS**
**STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN**

76.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

77.     At all relevant times the Defendants were engaged in the business of manufacturing, designing, testing, marketing, promoting, distributing, and/or selling ACTOS.

78.     ACTOS is defective and unreasonably dangerous to consumers.

79.     At all times mentioned in this Complaint ACTOS was defective and/or unreasonably dangerous to Plaintiffs and other foreseeable users at the time it left the control of the Defendants.

80.     ACTOS is defective in its design or formulation in that when it left the hands of the Defendants, its foreseeable risks exceed the benefits associated with its design and formulation and/or it was more dangerous than an ordinary consumer would expect.

81.     The foreseeable risks associated with the design or formulation of ACTOS, include, but are not limited to, the fact that the design or formulation of ACTOS is more dangerous than a reasonably prudent consumer would expect when used in an intended and reasonably foreseeable manner.

82.     At all times material to this action, ACTOS was expected to reach, and did reach consumers in the State of New York and throughout the United States, including the Plaintiffs, without substantial change in the condition in which it was sold.

83.     Defendants, developed, marketed and distributed ACTOS drug products to the general public even after learning of the design and manufacturing defects that threatened the intended use of ACTOS.

84.     Defendants knew or should have known through testing, adverse event reporting, or otherwise, that ACTOS created a high risk of bodily injury and serious harm.

85.     The dangerous propensities of ACTOS drug products were known or scientifically knowable, through appropriate research and testing, to the Defendants at the time said Defendants distributed, supplied, or sold ACTOS, and not known to ordinary physicians who would be expected to prescribe ACTOS for their patients.

86.     ACTOS drug products, as distributed, were defective and unreasonably dangerous inasmuch as ACTOS were not accompanied by warnings and instructions that were appropriate and adequate to render ACTOS reasonably safe for their ordinary, intended, and reasonably foreseeable uses, in particular the common, foreseeable, and intended use of ACTOS.

87.    In order to advance Defendant's own pecuniary interests, Defendants intentionally proceeded with the manufacturing, the sale and distribution, and marketing of ACTOS drug products with knowledge that consumers would be exposed to serious danger.

88.    At all times material to this action, ACTOS was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a "defective" and "unreasonably dangerous" condition, at the time it was placed in the stream of commerce in ways that include, but are not limited to one or more of the particulars:

a.    At the time ACTOS left the control of the Defendants ACTOS was defective and unreasonably dangerous due to a failure to contain adequate warnings or instructions, or, in the alternative, because it was designed in a defective manner, or, in the alternative, because ACTOS breached an express warranty or failed to conform to other expressed factual representations upon which Plaintiffs/Decedents' physicians justifiably relied, or because it breached an implied warranty, all of which proximately caused the damages for which Plaintiffs/Decedents seek recovery herein;

b.    ACTOS drug products were not reasonably safe as designed, taking into account the foreseeable risks involved in its use at the time ACTOS left the possession of the Defendants, and that such risks clearly outweighed the utility of ACTOS therapy or its therapeutic benefits, and subjected Plaintiffs/Decedents to the risk of suffering avoidable bladder cancer, heart attacks, and cardiac arrhythmias;

c.    At the time ACTOS left the control of the Defendants ACTOS possessed a dangerous characteristic that may cause damage and it was not reasonably safe due to inadequate or defective warnings or instructions that were known or reasonably scientifically knowable at the time ACTOS left the possession of the Defendants.  Specifically, although the Defendants were well aware that ACTOS products could potentially cause severe side effects;

d.    The Defendants' warnings or instructions were not of a nature that a reasonably prudent drug company in the same or similar circumstances would have provided with respect to the danger.  There were no warnings or instructions that communicate sufficient information on the dangers and safe use of ACTOS taking into account the characteristics of the ACTOS, and/or the ordinary knowledge common to the physician who prescribes and the consumer who purchases ACTOS, such as the Plaintiffs/Decedents;

e.    ACTOS manufactured and supplied by the Defendants were further defective

21

due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risks of injury from ACTOS drug products associated with the use as commonly prescribed, Defendants failed to promptly respond to and adequately warn about the risks of suffering avoidable bladder cancer, heart attacks, and cardiac arrhythmias associated with the use of ACTOS;

    f.   When placed in the stream of commerce, ACTOS was defective in design and formulation, making the use of ACTOS more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with other similar drugs on the market;  and

    g.   ACTOS was insufficiently tested.

89.    The Defendants knew, or in light of reasonably available scientific knowledge should have known, about the danger that caused the injuries for which the Plaintiffs seek recovery.

90.    The Defendants knew or in light of reasonably available scientific knowledge should have known about the danger associated with use of ACTOS that caused the damages for which Plaintiffs seek recovery.

91.    The reasonably foreseeable use of ACTOS involved substantial dangers not readily recognizable by the ordinary physician who prescribed ACTOS or the patient, including the Plaintiff, who consumed ACTOS drug products.

92.    The Defendants knew that ACTOS drug products were to be prescribed by physicians and used by consumers without inspection for defects in the product or in any of its components or ingredients and that ACTOS was not properly prepared nor accompanied by adequate warnings of the dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

93.    Plaintiff and Plaintiff's physicians did not know, nor had reason to know, at the time of the use of Defendants' ACTOS drug products, or at any time prior to its use, of the existence of the above-described defects and inadequate warnings.

94.     The above defects caused serious injuries to Plaintiffs when ACTOS was used in its intended and foreseeable manner, and in the manner recommended by the Defendants and/or in a non-intended manner that was reasonably foreseeable.

95.     In addition, at the time that ACTOS left the control of the Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Plaintiffs' injuries without impairing the reasonably anticipated or intended function of ACTOS.  These safer designs were economically and technologically feasible and would have prevented or significantly reduced the risk of Plaintiffs' injuries without substantially impairing ACTOS' utility.

96.     As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff suffered severe and irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiff's earnings capacity; incurred and will continue to incur expenses for medical treatment of Plaintiff injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

97.     For the above reasons, the Defendants are strictly liable under New York product liability law without regard to proof of negligence or gross negligence.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiffs for their injuries and which will deter the Defendants and others from like conduct.

## THIRD CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## STRICT PRODUCTS LIABILITY - MANUFACTURING DEFECT

98.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

99.     At all times material to this action, Defendants were engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling and/or selling ACTOS.

100.    At all times material to this action, ACTOS was expected to reach, and did reach consumers in the State of New York and throughout the United States, including the Plaintiffs, without substantial change in the condition from which it was sold.

101.    At all times material to this action, ACTOS was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways that include, but are not limited to, one or more of the following particulars posing a serious risk of injury and death.

      a.  When placed in the stream of commerce, ACTOS contained manufacturing defects that rendered the product unreasonably dangerous;

      b.  ACTOS manufacturing defects occurred while the product was in the possession and control of the Defendants;

      c.  ACTOS was not made in accordance with the Defendants' product specifications or performance standards; and

d.  ACTOS's manufacturing defects existed before it left the control of the Defendants.

102.    As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff suffered severe and irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiffs earnings capacity; incurred and will continue to incur expenses for medical treatment of Plaintiffs' injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

103.    For the above reasons, the Defendants are strictly liable under New York product liability law without regard to proof of negligence or gross negligence.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiffs for their injuries and which will deter the Defendants and others from like conduct.

## FOURTH CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## STRICT PRODUCTS LIABILITY - FAILURE TO WARN

104.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

105.    ACTOS was defective and unreasonably dangerous when it left the possession of the Defendants in that it contained warnings insufficient to alert consumers, including the Plaintiffs/Decedents and/or their health care providers, of the dangerous risks and reactions associated with ACTOS, including but not limited to its propensity to cause avoidable bladder

cancer, heart attacks, and cardiac arrhythmias, and other serious injuries and side effects despite the Defendants' knowledge of the increased risk of these injuries over similar drugs.

106.    ACTOS was defective due to inadequate post-marketing warnings or instruction because after Defendants knew or should have known of the risk and danger of serious bodily harm and/or death from the use of ACTOS, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury and/or death.

107.    Plaintiff was prescribed and used ACTOS for its intended purpose.

108.    Plaintiff could not have known about the dangers and hazards presented by ACTOS.

109.    The warnings that were given by the Defendants were not accurate, clear, complete and/or were ambiguous.

110.    The warnings that were given by the Defendants failed to properly warn physicians of the increased risks of bladder cancer, heart attacks, cardiac arrhythmias and other serious injuries and side effects, and failed to instruct physicians to test and monitor for the presence of the injuries for which Plaintiffs and others had been placed at risk.

111.    The warnings that were given by the Defendants failed to properly warn consumers of the increased risk of bladder cancer, heart attacks, cardiac arrhythmias, and other serious injuries and side effects.

112.    Plaintiff, individually and through his prescribing physicians, reasonably relied upon the skill, superior knowledge, and judgment of the Defendants. The Defendants had a continuing duty to warn the Plaintiffs of the dangers associated with ACTOS. Had the Plaintiff received adequate warnings regarding the risks of ACTOS, he would not have used ACTOS.

113.   As a direct and proximate result of ACTOS's defective and inappropriate warnings, Plaintiff suffered severe physical injuries and damages as described above.

114.   As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff suffered severe and irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiffs' earnings capacity; incurred and will continue to incur expenses for medical treatment of Plaintiffs' injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

115.   For the above reasons, the Defendants are strictly liable under New York product liability law without regard to proof of negligence or gross negligence.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiffs for their injuries and which will deter the Defendants and others from like conduct.

## FIFTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS
## BREACH OF EXPRESS WARRANTY

116.   Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

117.   Defendants' expressly warranted to the Plaintiffs that ACTOS drug products were safe and effective.

118.   In response to these promises and express statements, Plaintiff and Plaintiff's physicians relied on such affirmations and warranties.

119.    ACTOS drug products do not conform to those express representations in light of recently discovered disclosures and information previously withheld by Defendants.  Defendants' express warranty through its false statements failed to disclose design, manufacturing and safety defects inherent in ACTOS.

120.    Defendants breached its warranties of ACTOS by continuing sales and marketing campaigns highlighting the safety of its ACTOS drug products, while it knew of the design, manufacturing and safety defects and the risk of bladder cancer, heart attacks, and cardiac arrhythmias, as described throughout this Complaint.

121.    As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff developed severe side effects as described herein, and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiffs' earnings capacity;  incurred and will continue to incur expenses for medical treatment of Plaintiffs' injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiffs for their injuries and which will deter the Defendants and others from like conduct.

## SIXTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS
## BREACH OF IMPLIED WARRANTIES

122.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

123.    The Defendants knew that most physicians who prescribed ACTOS drug products were not aware of the serious side effects as described herein associated with use of ACTOS.   The Defendants also knew that the risks of said side effects were much greater than most physicians realized.  By failing to give adequate warnings about these side effects and the risk of the use that is associated with those side effects, the Defendants breached implied warranties of merchantability and fitness for the ordinary use of ACTOS.

124.    At all times mentioned in this Complaint, the Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold ACTOS drug products and prior to the time ACTOS was used by Plaintiff, the Defendants impliedly warranted to Plaintiff and to Plaintiff's's physicians that ACTOS were of merchantable quality and safe and fit for the use for which ACTOS were intended.

125.    Plaintiffs relied on the skill and judgment of the Defendants in using ACTOS drug products.

126.    ACTOS drug products were not safe and were unfit for their intended use, nor were ACTOS of merchantable quality, as warranted by the Defendants, in that ACTOS had very dangerous propensities when put to intended use and would cause severe injury to the user. ACTOS drug products were not properly prepared nor accompanied by adequate warnings of ACTOS dangerous propensities that were either known or reasonably scientifically knowable at

the time of distribution.  As a result, ACTOS drug products proximately caused Plaintiffs to sustain damages and injuries as alleged in this Complaint.

127.    As a direct and proximate result of the wrongful acts of the Defendants, Plaintiffs developed severe side effects as described herein, and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiffs' earnings capacity;  incurred and will continue to incur expenses for medical treatment of Plaintiffs' injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiffs for their injuries and which will deter the Defendants and others from like conduct.

## SEVENTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS
## BREACH OF IMPLIED WARRANTY FOR A PARTICULAR PURPOSE

128.    At all times herein mentioned, Defendants manufactured, compounded,  portrayed, distributed, recommended, merchandized, advertised, promoted and sold Actos and pioglitazone hydrochloride, to treat Type 2 Diabetes Mellitus.

129.    Defendants impliedly represented and warranted to the users of Actos that Actos was safe and fit for the particular purpose for which said product was to be used, namely treating diabetes, improving health, maintaining health, and potentially prolonging life.

130.    These representations and warranties aforementioned were false, misleading, and inaccurate in that Actos and pioglitazone hydrochloride were unsafe, degraded Plaintiff's health and shortened their life expectancy.

131.    Plaintiffs relied on the implied warranty of fitness for a particular use and purpose.

132.    Plaintiffs reasonably relied upon the skill and judgment of Defendants as to whether Actos was safe and fit for its intended use.

133.    Actos and pioglitazone hydrochloride were injected into the stream of commerce by Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

134.    Defendants breached the aforesaid implied warranty, as their drug Actos was not fit for its intended purposes and uses.

135.    As a direct and proximate result of the forgeoing, Plaintiff developed severe side effects as described herein, and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiffs' earnings capacity; incurred and will continue to incur expenses for medical treatment of Plaintiffs' injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiffs for their injuries and which will deter the Defendants and others from like conduct.

## EIGHTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS
## FRAUDULENT MISREPRESENTATION

136.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

137.    Defendants had actual knowledge of facts, which demonstrated that representations in the package insert, and/or the PDR monograph, and/or literature, and/or other mediums that the Defendants distributed concerning their ACTOS drug products were false and misleading. Defendants had an absolute duty to disclose the true facts regarding the safety of ACTOS to physicians and their patients and the medical community, which they negligently failed to do. Furthermore, Defendants had a duty to ensure that they had a reasonable basis for making the representations described above, to exercise reasonable care in making those representations, to accurately make those representations, and to not make misrepresentations concerning ACTOS, all of which Defendants failed to do.

138.    Important information regarding the risk of ACTOS was in the exclusive control of Defendants and was exclusively known by Defendants.  In the furtherance of Defendants' own interests, Defendants disseminated false information regarding ACTOS to physician and Plaintiffs and did so knowing that the safety of ACTOS depended on the accuracy of that information. Further, Defendants knew and expected that recipients of that information would rely on the information that the recipients would take action based upon the information, and that individuals would be put in peril by such actions and that those individuals would suffer physical harm as a result.

139.    Defendants expressly and/or impliedly represented to Plaintiffs, Plaintiff's physicians, the medical community, and members of the general public that their ACTOS drugs were safe for use.  The representations by Defendants were, in fact, false.  The true facts were that ACTOS was not safe for its intended use and was, in fact, dangerous to the health and body of the Plaintiffs/Decedents.

140.    Defendants made the above-described representations with no reasonable grounds for believing them to be true.  Defendants did not have accurate or sufficient information concerning these representations and they failed to exercise reasonable care both in ascertaining the accuracy of the information contained in those representations and in communicating the information.

141.    The aforementioned misrepresentations or omissions were made to the Plaintiffs, and Plaintiff's physicians, and the medical community, all of whom justifiably and foreseeably relied on those representations or omissions.  Plaintiffs would not have suffered injuries but for the above misrepresentations or omissions of Defendants.  Thus, Defendants and Defendants' misrepresentations or omissions were a cause in fact and a proximate cause of Plaintiffs' damages.

142.    As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff developed severe side effects as described herein, and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiffs' earnings capacity;  incurred and will continue to incur expenses for medical treatment of Plaintiffs' injuries; suffered and will continue to suffer the loss of enjoyment of life and have been otherwise damaged to be further shown by the evidence.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiffs/Decedents for their injuries and which will deter the Defendants and others from like conduct.

### NINTH CAUSE OF ACTION
### AGAINST THE DEFENDANTS
### FRAUDULENT CONCEALMENT

143.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

144.    At all times during the course of dealing between Defendants and Plaintiffs, and/or Plaintiffs' healthcare providers, and/or the FDA, Defendants misrepresented the safety of ACTOS for its intended use.

145.    Defendants knew or were reckless in not knowing that its representations were false.

146.    In representations to Plaintiff, and/or Plaintiff's healthcare providers, and/or the FDA, Defendants fraudulently concealed and intentionally omitted the following material information:

    a.    that ACTOS was not safe;

    b.    that the risks of adverse events with ACTOS were high;

    c.    that the risks of adverse events with ACTOS were not adequately tested and/or known by Defendants;

    d.    that Defendants were aware of dangers in ACTOS, in addition to and above and beyond those associated with alternative medications;

    e.    that ACTOS was defective, and that it caused dangerous side effects;

f.  that patients needed to be monitored more regularly than normal while using ACTOS;

g.  that ACTOS was manufactured negligently;

h.  that ACTOS was manufactured defectively;

i.  that ACTOS was manufactured improperly;

j.  that ACTOS was designed negligently;

k.  that ACTOS was designed defectively; and

l.  that ACTOS was designed improperly.

147.  Defendants were under a duty to disclose to Plaintiff, and his physicians, hospitals, healthcare providers, and/or the FDA the defective nature of ACTOS, including but not limited to bladder cancer, heart attacks, and cardiac arrhythmias.

148.  Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used ACTOS, including the Plaintiffs, in particular.

149.  Defendants' concealment and omissions of material facts concerning, inter alia, the safety of ACTOS was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiffs, and their physicians, hospitals and healthcare providers into reliance, continued use of ACTOS, and actions thereon, and to cause them to purchase, prescribe, and/or dispense ACTOS and/or use the product.

150.  Defendants knew that Plaintiffs, and their physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding ACTOS, as set forth herein.

151.    Plaintiffs, as well as their doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

152.    As a result of the foregoing acts and omissions the Plaintiffs were and still are caused to suffer and/or is at a greatly increased risk of serious and dangerous side effects including, inter alia, bladder cancer, heart attacks, and cardiac arrhythmias, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life.

153.    As a result of the foregoing acts and omissions Plaintiffs requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiffs are informed and believe and further allege that Plaintiffs will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiffs for their injuries and which will deter the Defendants and others from like conduct.

### TENTH CAUSE OF ACTION
### AGAINST THE DEFENDANTS
### NEGLIGENT MISREPRESENTATION

154.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

155.    Defendants had a duty to represent to the medical and healthcare community, and to the Plaintiffs, the FDA and the public in general that said product, ACTOS, had been tested and found to be a safe and effective form of therapy.

156.     The representations made by Defendants were, in fact, false.

157.     Defendants failed to exercise ordinary care in the representation of ACTOS, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce in that Defendants negligently misrepresented ACTOS's high risk of unreasonable, dangerous side effects.

158.     Defendants breached their duty in representing ACTOS's serious side effects to the medical and healthcare community, to the Plaintiffs, the FDA and the public in general.

159.     As a result of the negligent misrepresentations of the Defendants set forth hereinabove, said Defendants knew and were aware or should have known that ACTOS had been insufficiently tested, and/or had not been tested, that it lacked adequate and/or accurate warnings, and/or that it created a high risk and/or higher than acceptable risk, and/or higher than reported/represented risks, as well as unreasonable, dangerous side effects, including, inter alia, bladder cancer, heart attacks, congestive heart failure and cardiac arrhythmias, as well as other severe and personal injuries which are permanent and lasting in nature.

160.     As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiffs are informed and believe and further allege that Plaintiffs will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiffs/Decedents for their injuries and which will deter the Defendants and others from like conduct.

## ELEVENTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS
## <u>FRAUD AND DECEIT</u>

161.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

162.    Defendants conducted research and used ACTOS as part of their research.

163.    As a result of Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including, but not limited to, assuring the public, the Plaintiff, his doctors, hospitals, healthcare professionals, and/or the FDA that ACTOS was safe and effective for use.

164.    As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to the public, healthcare professionals, and/or the FDA, including the Plaintiff.

165.    Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Plaintiff, as well as his respective healthcare providers and/or the FDA.

166.    The information distributed to the public, the FDA, and the Plaintiffs by Defendants, including, but not limited to, reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, and all other commercial media contained material representations of fact and/or omissions.

167.    The information distributed to the public, the FDA, and the Plaintiffs by Defendants intentionally included representations that Defendants' drug ACTOS was safe and effective for use.

168.    The information distributed to the public, the FDA, and the Plaintiff, by Defendants intentionally included representations that Defendants' drug ACTOS carried the same risks, hazards, and/or dangers as other alternative medications.

169.    The information distributed to the public, the FDA, and the Plaintiff, by Defendants intentionally included false representations that ACTOS was as potentially injurious to the health and/or safety of its intended use as other alternative medications.

170.    These representations were all false and misleading.

171.    Upon information and belief, Defendants intentionally suppressed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that ACTOS was not safe.

172.    Defendants intentionally made material representations to the FDA and the public, including the medical profession, and the Plaintiff, regarding the safety of ACTOS, specifically, but not limited to ACTOS not having dangerous and serious health and/or safety concerns.

173.    Defendants intentionally made material representations to the FDA and the public in general, including the medical profession, and the Plaintiff, regarding the safety of ACTOS.

174.    That it was the purpose of Defendants in making these representations to deceive and defraud the public, the FDA, and/or the Plaintiff, to gain the confidence of the public, healthcare professionals, the FDA, and/or the Plaintiff, to falsely ensure the quality and fitness for use of ACTOS and induce the public, and/or the Plaintiff to purchase, request, dispense, prescribe, recommend, and/or continue to use ACTOS.

175.    Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiff that ACTOS was fit and safe for its intended use.

39

176.     Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiff that ACTOS was fit and safe for use and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other alternative medications.

177.     That Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiff that ACTOS did not present serious health and/or safety risks.

178.     That Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiff that ACTOS did not present health and/or safety risks greater than alternative forms of medication.

179.     That these representations and others made by Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

180.     That these representations and others, made by Defendants, were made with the intention of deceiving and defrauding the Plaintiff, including their respective healthcare professionals and/or the FDA, and were made in order to induce the Plaintiff and/or their respective healthcare professionals to rely upon misrepresentations and caused the Plaintiff to purchase, use, rely on, request, dispense, recommend, and/or prescribe ACTOS.

181.     That Defendants, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of ACTOS to the public at large, the Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives.

182.    That Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of ACTOS by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of ACTOS.

183.    That Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling the Plaintiff, as well as their respective healthcare professionals into a sense of security so that Plaintiff would rely on the representations and purchase, use and rely on ACTOS and/or that their respective healthcare providers would dispense, prescribe, and/or recommend the same.

184.    Defendants, through their public relations efforts, which included but were not limited to the public statements and press releases, knew or should have known that the public, including the Plaintiff, as well as their respective healthcare professionals  would rely upon the information being disseminated.

185.    Defendants utilized direct to consumer advertising to market, promote, and/or advertise ACTOS.

186.    That the Plaintiff and/or their respective healthcare professionals did in fact rely on and believe the Defendants' representations to be true at the time they were made and relied upon the representations and were thereby induced to purchase, use and rely on Defendants' drug ACTOS.

187.    That at the time the representations were made, the Plaintiff and/or their respective healthcare providers did not know the truth with regard to the dangerous and serious health and/or safety concerns of ACTOS.

188.    That the Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could the Plaintiff with reasonable diligence have discovered the true facts.

189.    That had the Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of ACTOS, Plaintiff would not have purchased, used and/or relied on Defendants' drug ACTOS.

190.    That the Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on the Plaintiff.

191.    As a result of the foregoing acts and omissions Plaintiff were caused to suffer and/or are at a greatly increased risk of serious and dangerous side effects including, inter alia, bladder cancer, heart attacks, and cardiac arrhythmias, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

192.    As a result of the foregoing acts and omissions the Plaintiff require and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiff is informed and believe and further allege that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiffs for their injuries and which will deter the Defendants and others from like conduct.

## TWELFTH CAUSE OF ACTION
## AGAINST DEFENDANTS
## VIOLATION OF CONSUMER PROTECTION STATUTES

193.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

194.    At all times material hereto, the Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below when it failed to adequately warn consumers and the medical community of the safety risks associated with the ACTOS.

195.    At all times material hereto, the Defendants knew and recklessly disregarded the fact that ACTOS was subject to an increased risk of bladder cancer, heart attacks, congestive heart failure and cardiac arrhythmias with far greater frequency than safer alternative medications.

196.    Notwithstanding the foregoing, the Defendants continued to aggressively market the subject product without disclosing the aforesaid side effects when there were safer alternative medications.

197.    As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiffs suffered and will continue to suffer personal injury, economic loss, pecuniary loss, loss of companionship and society, mental anguish and other compensable injuries.

198.    Defendants have engaged, in the State of New York, in unfair competition or unfair or deceptive acts or practices in violation of New York General Business Law § 349.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiffs for their injuries and which will deter the

Defendants and others from like conduct.

## THIRTEENTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS
## LOSS OF CONSORTIUM

199.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

200.    Plaintiffs incorporate by reference the paragraphs above, as though fully set forth herein.

201.    As a direct and proximate result of the foregoing, Plaintiff Janet Sanders was deprived of the comfort and enjoyment of the services and society of her spouse Plaintiff John Sanders, and have suffered and will continue to suffer economic loss, and have otherwise been emotionally and economically injured.  Plaintiffs' injuries and damages are permanent and will continue into the future.  Plaintiffs seek actual and punitive damages from the Defendants as alleged herein,

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount, which will compensate the Plaintiffs for their injuries and which will deter the Defendants and others from like conduct

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.    Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided

by law;

    2.      Awarding punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

    3.      Awarding Plaintiffs reasonable attorneys' fees;

    4.      Awarding Plaintiffs the costs of these proceedings; and

    5.      Such other and further relief as this Court deems just and proper.

Dated: February 10, 2017

                    Respectfully Submitted,

                    s/TODD M. RUBIN, ESQ
                    TODD M. RUBIN (TR-5465)
                    FINZ & FINZ, P. C.
                    Attorneys for Plaintiffs
                    JOHN SANDERS AND
                    JANET SANDERS
                    410 East Jericho Turnpike
                    Mineola, NY 11501
                    (516) 433-3000
                    Our File No. 160237

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN SANDERS AND JANET SANDERS<br><br>                          Plaintiffs,<br><br>            vs.<br><br>TAKEDA PHARMACEUTICALS USA, INC. f/k/a TAKEDA PHARMACEUTICALS NORTH AMERICA, INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER, INC., and TAKEDA PHARMACEUTICALS INTERNATIONAL, INC.<br><br>                          Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiffs, by their attorneys, **FINZ & FINZ, P.C.**, hereby demand trial by jury as to all issues.

Dated: February 10, 2017

                                        Respectfully submitted,


                                        s/TODD M. RUBIN, ESQ.
                                        TODD M. RUBIN (TR-5465)
                                        FINZ & FINZ, P. C.
                                        Attorneys for Plaintiffs
                                        JOHN SANDERS AND
                                        JANET SANDERS
                                        410 East Jericho Turnpike
                                        Mineola, NY 11501
                                        (516) 433-3000
                                        Our File No. 160237